IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION

ELECTRONICALLY FILED
Sep 08 2021
U.S. DISTRICT COURT
Northern District of WV

**POTOMAC RIVERKEEPER, INC.,**
d/b/a **POTOMAC RIVERKEEPER
NETWORK** and **THE SIERRA CLUB,**

      **Plaintiffs,**

v.   Civil Action No. 2:21-CV-23 (Kleeh)

**VIRGINIA ELECTRIC AND POWER
COMPANY,**

      **Defendant.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

1. This is a citizen suit for declaratory and injunctive relief and civil penalties against Virginia Electric and Power Company ("VEPCO") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereafter the Clean Water Act ("CWA")), at its Mt. Storm Power Station in Mt. Storm, West Virginia.

2. As detailed below, Plaintiffs allege that VEPCO has discharged and continues to discharge pollutants into waters of the United States in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342, and the conditions and limitations of West Virginia/National Pollutant Discharge Elimination System ("WV/NPDES") Permit No. WV0005525 issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (CWA citizen suit provision).

4.      On May 28, 2021, Plaintiffs mailed notice of the violations and their intent to file suit in letters addressed to the defendant, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP") as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5.      More than sixty days have passed since the notice letters were sent. Neither EPA nor WVDEP have commenced or diligently prosecuted a civil or criminal action to redress Defendant's violations. Moreover, neither the EPA nor WVDEP have commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law, to adequately redress the violations described in the notice letters.

6.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the CWA violations are located in this District.

7.      VEPCO is a Virginia corporation engaged in the business of generating electricity. It is a wholly owned subsidiary of Dominion Energy, Inc. Its principal place of business is in Richmond, Virginia.

8.      VEPCO is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

9.      Plaintiff Potomac Riverkeeper Network (PRKN) is a 501(c)(3) non-profit organization with three regional Waterkeeper branches: Potomac Riverkeeper, Upper Potomac Riverkeeper, and Shenandoah Riverkeeper.  PRKN's mission is to protect the public's right to clean water in our rivers and streams, stop pollution, promote safe drinking water, protect healthy river habitats, and enhance public use and enjoyment. Many members of PRKN are avid kayakers, anglers, birdwatchers, business owners, and other users of the Potomac and Shenandoah rivers and their tributaries.

10.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 780,000 members and supporters nationwide, including approximately 2,600 members who reside in West Virginia and belong to its West Virginia Chapter. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of Earth; to practicing and promoting responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's concerns encompass the exploration, enjoyment, and protection of surface waters in West Virginia.

11.     Plaintiffs sue on behalf of their member, Vincent Meehan, who uses, enjoys, and benefits from the water quality in Mt. Storm Lake, the Stony River, and the North Potomac River. Mr. Meehan regularly visits the Mt. Storm area.  He fishes for bass in Mt. Storm Lake around four times a year. He also fishes frequently in the North Branch of the Potomac River downstream from that Lake.  Mr. Meehan understands that the Stony River is historically brook trout habitat and that populations still exist in the headwaters of the river. He would like to fish for walleye in Mt. Storm Lake and walleye and/or trout in the Stony River but is concerned that excessive heat in the water discharged from the Mt. Storm Power Station could negatively affect the presence, abundance and/or health of such species, thereby reducing his enjoyment in, and chances of, catching them. If VEPCO complied with its permit and its excessive heat violations were reduced or eliminated, the risk of such adverse effects may be reduced.  Mr. Meehan would benefit from any decreased risk of adverse effects on the fishery in the Lake, the Stony River, and the North Potomac River. He would like to fish in the Stony River if the temperature discharged into it from Mt. Storm Lake was better controlled.

12. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5) and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

13. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States, except in compliance with the terms and conditions of a permit, including NPDES permits issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14. Section 402(a) of the CWA, 33 U.S.C. §1342(a), provides that the permit-issuing authority may issue a NPDES permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority deems necessary to carry out the provisions of the CWA.

15. The Administrator of EPA authorized WVDEP to issue NPDES permits on May 10, 1982, pursuant to Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2). 47 Fed. Reg. 22,363 (May 24, 1982). The applicable West Virginia law for issuing NPDES permits is the West Virginia Water Pollution Control Act, W. Va. Code § 22-11-1, et seq.

16. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

17. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation" for purposes of the citizen suit provision of the CWA in Section 505(a), 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a) of the CWA, 33 U.S.C.

§ 1311(a), and "a permit or condition thereof issued" under Section 402 of the CWA, 33 U.S.C. §1342.

18. In an action brought under the citizen suit provision of Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties.

19. Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

20. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States up to $25,000 per day for each violation.

21. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Public law 114-74, 129 Stat. 584, the court may assess a civil penalty of up to $56,460 per day for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4; Civil Monetary Penalty Inflation Adjustment, 85 Fed. Reg. 83,818 (Dec. 23, 2020).

## FACTS

22. VEPCO's water discharge activities at the Mt. Storm site are regulated under WV/NPDES Permit No. WV0005525. The currently effective permit was reissued on December 16, 2019 and is in effect from February 1, 2020 through December 15, 2024. The 2019 permit replaced a similar permit that was issued on June 30, 2014, and was in effect from August 1, 2014,

through January 31, 2020.  The 2014 permit replaced a similar permit that was issued on April 14, 2008, and was in effect from May 14, 2008, through July 31, 2014.

23. VEPCO created Mount Storm Lake as an impoundment of the Stony River to provide cooling water for the facility.  WVDEP considers the lake to be an industrial impoundment rather than a water of the United States.  In its March 2008 comments on the draft 2008 permit, EPA did not object to WVDEP's determination.  As a result, water-quality based effluent limitations are imposed at Outlet 001 (the dam spillway from Mount Storm Lake into the lower Stony River) rather than at internal outlets to the impoundment.

24. Outlet 001 discharges into the Stony River, which is a tributary of the North Potomac River.

25. The 2008, 2014 and 2019 permits each contain an effluent limitation that limits the temperature difference between upstream and downstream waters measured at Outlet 001 in the Stony River.  That limit is an instantaneous maximum temperature difference of not more than 5 degrees Fahrenheit.  The permits require the temperature difference to be measured at least once per week.  The temperature difference limitation is based on, and required by, West Virginia water quality standards.  46 C.S.R. § 1, Appendix E, Table 1, ¶ 8.28 ("Temperature rise shall be limited to no more than 5 °F above natural temperature").

26. The temperature difference limitation first became effective and enforceable under the 2008 permit on May 14, 2008, and has remained in effect continuously since that time.

27. WVDEP has issued two administrative orders to VEPCO that contain compliance schedules that purport to extend the deadline for compliance with the temperature difference limit until March 31, 2023, a delay of nearly fifteen years.  Order No. 6291 was initially issued on April 14, 2008 and extended the compliance deadline to July 1, 2014.  WVDEP amended that order five

times on July 2, 2009, October 29, 2010, June 27, 2014, October 21, 2014 and March 27, 2015. The fifth amendment extended the compliance deadline to July 31, 2015. Order No. 8240 was initially issued on July 30, 2015 and extended the compliance deadline to amended six times on August 17, 2015, November 5, 2019, February 24, 2020, April 20, 2020, September 24, 2020 and January 26, 2021. The fifth and sixth amendments extended the compliance deadline for that limit until March 31, 2023.

28. WVDEP stated in its February 2020 administrative order that "studies provided by the permittee have shown that the thermal discharge does not ensure the protection and propagation of a balanced, indigenous population of shellfish, fish, and wildlife in and on the Stony River." It stated that "significant thermal spikes [are] caused by the discharge over short periods of time which corresponded with significant changes in flow rate" and that "these significant changes were believed to be detrimental to any benefits obtained to the downstream aquatic life from any prior efforts by the permittee." WVDEP also stated that it "believes that drastic changes in flow over the spillway are detrimental and counterproductive to obtaining a sustained BIP (balanced, indigenous population) in the Stony River."

29. In its March 2008 comments on the draft permit, EPA stated that WVDEP's compliance schedules in its administrative orders "cannot modify permit requirements, and should not contain any language indicating so." The orders do not purport to modify the temperature difference limitation in the permits. Order No. 8240 states that "[t]he permittee shall immediately take measures to initiate compliance with all terms and conditions of WV/NPDES Permit No. WV0005525." Both orders also state that "[c]ompliance with the terms and conditions of this Order shall not in any way be construed as relieving the permittee of the obligation to comply with

any applicable law, permit, other order, or any other requirement otherwise applicable." The two orders therefore do not affect the enforceability of the temperature difference limitation.

29. None of these orders qualify as administrative penalty orders with preclusive effect under 33 U.S.C. § 1319(g)(6). They did not impose any penalties for past violations or stipulated penalties for future violations of the temperature difference limitations. The orders were also subject to public notice and opportunity for comment prior to their issuance. They therefore have no preclusive effect on the ability of citizens to enforce the permit.

31. In its monthly discharge monitoring reports, VEPCO has reported instantaneous maximum upstream/downstream temperature differences at Outlet 001 that exceed its permit limit of 5 degrees Fahrenheit, as shown in Appendix to this Complaint.

32. Although the permit requires VEPCO to measure the temperature difference once per week, VEPCO's discharge monitoring reports only report one instantaneous maximum temperature difference per month. The continuity of VEPCO's violations in every month since January 2016 makes it likely that there are additional unreported violations in those months.

## CLAIM FOR RELIEF

33. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 32 above.

34. Since at least January 2016, VEPCO has discharged and continues to discharge pollutants from a point source, i.e., heated water from Outfall 001 of its Mt. Storm Power Station, into the Stony River, a tributary of the North Potomac River, in violation of the effluent limit on upstream/downstream temperature differences in WV/NPDES Permit No. WV0005525.

35. Since at least January 2016, VEPCO has failed to report on its monthly discharge monitoring reports all violations of the effluent limit on upstream/downstream temperature

differences in WV/NPDES Permit No. WV0005525. Those failures are violations of the reporting requirements in the permit.

36. The Upper Potomac River and its tributaries, including the Stony River, are waters of the United States within the meaning of the CWA, 33 U.S.C. § 1362(7).

37. VEPCO is in continuing and/or intermittent violation of the CWA as a result of its violations of the effluent limit and reporting requirements in WV/NPDES Permit No. WV0005525.

38. Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, VEPCO is liable for civil penalties up to $56,460 for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4; 85 Fed. Reg. 83,818.

39. VEPCO is also subject to an injunction under the CWA ordering it to cease its ongoing permit violations.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1. Declaring that VEPCO has violated and is in continuing violation of the CWA;

2. Enjoining VEPCO operating the Mt. Storm Power Station in such a manner as will result in further violations of WV/NPDES Permit No. WV0005525;

3. Ordering VEPCO to immediately comply with the effluent limit for upstream/downstream termperature difference and the reporting requirements in WV/NPDES permit WV0005525;

4. Ordering VEPCO to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair adverse environmental effects and/or degradation caused by its violations, and restore the environment to its prior unpolluted condition;

     5.     Ordering VEPCO to pay an appropriate civil penalty of up to $$56,460 per day for each CWA violation;

     6.     Awarding Plaintiffs their attorneys' fees, expert witness fees, and all other reasonable costs and expenses incurred in pursuit of this action; and

     7.     Granting such other relief as this Court deems just and proper.

DATED: September 8, 2021          Respectfully submitted,

          **/s/ J. Michael Becher**
          J. MICHAEL BECHER (WVBN 10588)
          Evan D. Johns (WVBN 12590)
          APPALACHIAN MOUNTAIN ADVOCATES, INC.
          P.O. Box 507
          Lewisburg, WV 24901
          Telephone:   (304) 382-4798
          Email:   mbecher@appalmad.org

          *Counsel for Plaintiffs*

## APPENDIX A: VIOLATIONS OF TEMPERATURE DIFFERENCE LIMIT AT OUTLET 001

|    | Month      | Reported | Units | % Over Limit |
|----|------------|----------|-------|--------------|
| 1  | 1/31/2016  | 29.5     | deg F | 490          |
| 2  | 2/28/2016  | 24.4     | deg F | 388          |
| 3  | 3/31/2016  | 23.7     | deg F | 374          |
| 4  | 4/30/2016  | 25.2     | deg F | 404          |
| 5  | 5/31/2016  | 22.2     | deg F | 344          |
| 6  | 6/30/2016  | 20.0     | deg F | 300          |
| 7  | 7/31/2016  | 15.1     | deg F | 202          |
| 8  | 10/31/2016 | 23.5     | deg F | 370          |
| 9  | 11/30/2016 | 14.1     | deg F | 182          |
| 10 | 12/31/2016 | 20.3     | deg F | 306          |
| 11 | 1/31/2017  | 22.6     | deg F | 352          |
| 12 | 2/28/2017  | 21.2     | deg F | 324          |
| 13 | 3/31/2017  | 15.8     | deg F | 216          |
| 14 | 4/30/2017  | 19.0     | deg F | 280          |
| 15 | 5/31/2017  | 17.5     | deg F | 250          |
| 16 | 6/30/2017  | 21.5     | deg F | 330          |
| 17 | 7/31/2017  | 26.0     | deg F | 420          |
| 18 | 8/31/2017  | 23.7     | deg F | 374          |
| 19 | 9/30/2017  | 7.0      | deg F | 40           |
| 20 | 10/31/2017 | 18.9     | deg F | 278          |
| 21 | 11/30/2017 | 25.6     | deg F | 412          |
| 22 | 12/31/2017 | 19.2     | deg F | 284          |
| 23 | 1/31/2018  | 17.3     | deg F | 246          |
| 24 | 2/28/2018  | 16.2     | deg F | 224          |
| 25 | 3/31/2018  | 17.0     | deg F | 240          |
| 26 | 4/30/2018  | 13.8     | deg F | 176          |
| 27 | 5/31/2018  | 11.2     | deg F | 124          |
| 28 | 6/30/2018  | 17.1     | deg F | 242          |
| 29 | 7/31/2018  | 13.6     | deg F | 172          |
| 30 | 8/31/2018  | 16.4     | deg F | 228          |
| 31 | 9/30/2018  | 22.7     | deg F | 354          |
| 32 | 10/31/2018 | 23.0     | deg F | 360          |
| 33 | 11/30/2018 | 22.1     | deg F | 342          |
| 34 | 12/31/2018 | 9.9      | deg F | 98           |
| 35 | 1/31/2019  | 9.3      | deg F | 86           |
| 36 | 2/28/2019  | 11.5     | deg F | 130          |

| 37 | 3/31/2019 | 7.4 | deg F | 48 |
|---|---|---|---|---|
| 38 | 4/30/2019 | 8.8 | deg F | 76 |
| 39 | 5/31/2019 | 20.2 | deg F | 304 |
| 40 | 6/30/2019 | 20.2 | deg F | 304 |
| 41 | 7/31/2019 | 19.1 | deg F | 282 |
| 42 | 11/30/2019 | 19.5 | deg F | 290 |
| 43 | 12/31/2019 | 19.5 | deg F | 290 |
| 44 | 1/31/2020 | 17.5 | deg F | 250 |
| 45 | 2/29/2020 | 12.7 | deg F | 154 |
| 46 | 3/31/2020 | 12.8 | deg F | 156 |
| 47 | 4/30/2020 | 15.3 | deg F | 206 |
| 48 | 5/31/2020 | 15.1 | deg F | 202 |
| 49 | 6/30/2020 | 20.7 | deg F | 314 |
| 50 | 7/31/2020 | 17.0 | deg F | 240 |
| 51 | 8/31/2020 | 15.0 | deg F | 200 |
| 52 | 10/31/2020 | 21.4 | deg F | 328 |
| 53 | 11/30/2020 | 20.4 | deg F | 308 |
| 54 | 12/31/2020 | 17.8 | deg F | 256 |
| 58 | 1/31/2021 | 16.5 | deg F | 230 |
| 59 | 2/28/2021 | 20.2 | deg F | 304 |
| 60 | 3/31/2021 | 16.2 | deg F | 224 |
| 61 | 4/30/2021 | 19.1 | deg F | 282 |
| 62 | 5/31/2021 | 20.4 | deg F | 308 |
| 63 | 6/30/2021 | 17.0 | deg F | 240 |