IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**POTOMAC RIVERKEEPER, INC. and**
**THE SIERRA CLUB,**

      **Plaintiffs,**

  **v.**                                      **CIVIL NO. 2:21-CV-23**
                                                          **(KLEEH)**

**VIRGINIA ELECTRIC AND POWER COMPANY,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING**
**PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],**
**AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Pending before the Court are Plaintiffs' partial motion for summary judgment and Defendant's motion for summary judgment. For the reasons discussed below, Plaintiffs' motion is **DENIED**, and Defendant's motion is **DENIED IN PART** and **GRANTED IN PART**.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

This is a citizen suit under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et. seq. (the "Clean Water Act"). The Plaintiffs, Potomac Riverkeeper, Inc. and the Sierra Club (together, "Plaintiffs"), allege that the Defendant, Virginia Electric and Power Company ("VEPCO"), has violated the conditions of its National Pollutant Discharge Elimination System Permit (the

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

"NPDES Permit")[1] at the Mount Storm Power Station in Mount Storm, West Virginia.

VEPCO is a wholly-owned subsidiary of Dominion Energy, Inc. See Compl., ECF No. 1, at ¶ 7. Potomac Riverkeeper, Inc. is a non-profit organization whose goal is "to protect the public's right to clean water in our rivers and streams, stop pollution, promote safe drinking water, protect healthy river habitats, and enhance public use and enjoyment." Id. ¶ 9. The Sierra Club is a non-profit organization "dedicated to exploring, enjoying, and protecting the wild places of Earth; to practicing and promoting responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives." Id. ¶ 10. Plaintiffs have sued on behalf of their member, Vincent Meehan. Id. ¶ 11.

VEPCO created Mount Storm Lake in 1963 as an impoundment of the Stony River to provide cooling water for the Mount Storm Power Station. Id. ¶ 23. The West Virginia Department of Environmental Protection ("WVDEP") considers Mount Storm Lake to be an industrial impoundment, as opposed to a "water of the United States," so Mount

---

[1]. The NPDES Permit, Permit No. WV0005525, was in effect until December 15, 2024.  Compl., ECF No. 1, at ¶ 22.

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Storm Lake is not regulated by the Clean Water Act. Id. As a result, water-quality effluent limitations are imposed at Outlet 001, which is the dam spillway from Mount Storm Lake into the lower Stony River. Id. The Stony River is a tributary of the North Branch of the Potomac River. Id. ¶ 24. The NPDES Permit requires that at Outlet 001, the temperature difference between upstream and downstream waters, which is known as the "Delta-T," may not exceed 5 degrees Fahrenheit. Id. ¶ 25. The temperature must be measured at least once per week. Id. The NPDES permit requires that VEPCO file discharge monitoring reports ("DMRs") on a monthly basis containing monitoring results. See Def. Memo. in Supp. of Mot. to Dismiss, Exhs. G and O, ECF Nos. 5-7 at 35 and 5-15 at 30.

Plaintiffs allege that since at least January 2016, VEPCO has violated its NPDES Permit and failed to report all of its violations. See Compl., ECF No. 1, at ¶¶ 34, 35. They assert in the Complaint that VEPCO is engaging in continuing and/or intermittent violations of the Clean Water Act. Id. ¶ 37. Plaintiffs argue in the Complaint that VEPCO is liable for civil penalties of up to $56,460.00 for each violation that occurred after November 2, 2015, and is also subject to an injunction. Id. ¶¶ 38, 39. Despite the Complaint's injunction language, Plaintiffs' partial motion for summary judgment indicates that

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Plaintiffs are not seeking injunctive relief because there have been no Delta-T violations since October 31, 2022.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Rather, the court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). At its core, the summary-judgment process examines whether a trial is needed. Id. at 250.

The same standards of review apply when both parties file motions for summary judgment. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment."). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

### III. DISCUSSION

Plaintiffs ask the Court to find that they have standing to bring this action, that the Court has subject matter jurisdiction, and that VEPCO is liable for 121,015 violations of the NPDES Permit. VEPCO moves the Court to find that Plaintiffs lack standing to challenge reporting requirements and that VEPCO is not liable for the alleged discharge and reporting violations. For the reasons discussed below, regarding the alleged Delta-T

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

violations, the Court finds that there is a genuine issue of material fact with respect to standing and, specifically, the element of redressability. Such a genuine issue of material fact prevents the Court from granting summary judgment for Plaintiffs. Because jurisdiction is disputed, the Court cannot address liability with respect to the alleged Delta-T violations. Regarding the alleged reporting violations, however, the Court grants VEPCO's motion in part because Plaintiffs have not established injury-in-fact or redressability. The Court also denies VEPCO's motion in part, to the extent that it asks the Court to assess liability for Delta-T violations.

Section 505(g) of the Clean Water Act authorizes the filing of a citizen suit by "a person or persons having an interest which is or may be adversely affected."  33 U.S.C. § 1365(g).  This provision confers standing to the limits of the United States Constitution. See PIRG v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 70 n.3 (3d Cir. 1990). An organization may establish associational standing to sue on behalf of its members "even without a showing of injury to the association itself[.]" United Food & Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 552 (1996). To establish associational standing, a plaintiff-organization must show (1) that "its members would otherwise have

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

standing to sue in their own right"; (2) that "the interests at stake are germane to the organization's purpose"; and (3) that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) (citation omitted).

### A. Delta-T Violations

Previously in this case, when the Court denied VEPCO's motion to dismiss, it found that Plaintiffs' member, Vincent Meehan, satisfied the injury-in-fact, traceability, and redressability requirements. See ECF No. 34. A plaintiff, however, must establish standing at each stage of the litigation. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. (citations omitted). A finding that a plaintiff established standing at the motion to dismiss stage "does not obviate the Court's responsibility to ensure that the plaintiff[] can actually prove those allegations when one or both parties seek

Case 2:21-cv-00023-TSK   Document 60   Filed 08/13/25   Page 8 of 17   PageID #: 1662

**POTOMAC RIVERKEEPERS V. VEPCO**                                    2:21-CV-23

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],
AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

summary judgment." Silver v. IRS, 531 F. Supp. 3d 346, 357 (D.D.C. 2021) (citation omitted).

"[T]he redressability prong entails that it must be likely, and not merely speculative, that a favorable decision will remedy the injury." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (citation omitted). "[I]f no realistic possibility exists that a plaintiff can obtain the ultimate relief, then he cannot show redressability." Sierra Club v. State Water Control Bd., 898 F.3d 383, 401 (4th Cir. 2018) (citation and quotation marks omitted). Courts have recognized that "complete redressability" is not required, and a plaintiff need only show that a favorable decision would alleviate its injury "to some extent." S. Env't Law Ctr. v. Bernhardt, 432 F. Supp. 626, 634 (W.D. Va. 2020) (citations omitted).

Plaintiffs allege that standing exists through organizational member Vincent Meehan. Mr. Meehan regularly fishes in Mount Storm Lake and downstream in the North Branch of the Potomac River. Meehan Decl., ECF No. 9-6, at ¶ 7. He would like to fish for Walleye and/or Brook Trout in the Stony River, but he is concerned that excessive heat in the water negatively affects the presence, abundance, or health of the fish, thereby reducing his enjoyment in and chances of catching them. See id. at ¶¶ 9-21. In a sworn

Case 2:21-cv-00023-TSK   Document 60   Filed 08/13/25   Page 9 of 17 PageID #: 1663

POTOMAC RIVERKEEPERS V. VEPCO                                    2:21-CV-23

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],
AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

declaration, Mr. Meehan stated that if Mount Storm Power Station were forced to comply with its temperature limitations, he "would absolutely fish in the Stony River," including the portion between Outlet 001 and the Route 50 bridge, which is within Mount Storm's thermal component. Id. at ¶ 17.

Regarding redressability, the question is whether it is likely that VEPCO's compliance with its temperature limitations would increase the number of Walleye and/or Brook Trout in the portion of the Stony River that is between Outlet 001 and the Route 50 bridge. In deciding redressability at the motion to dismiss stage, this Court relied in part on the opinion of Plaintiffs' expert Jay Richard Stauffer, Jr. that "[r]educing water temperatures and temperature oscillations in the Lake and the Stony River would likely . . . increase the occurrence and growth of Walleye and Brook Trout in the lake and in the downstream Stony River and North Branch of the Potomac River." Stauffer Decl., ECF No. 9-3, at ¶ 9. The Court concluded, based on the information presented, that "warmer water is detrimental" to the "survivability" of Walleye and Brook Trout and that "[i]f VEPCO complied with temperature restrictions, there would likely be more trout and walleye to fish." ECF No. 34 at 16. Dr. Stauffer's opinion was uncontested at the time. Since then, VEPCO expert

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Kyle J. Hartman has prepared a report and been deposed. Dr. Stauffer has not been deposed.

With respect to Brook Trout, VEPCO expert Dr. Hartman recognized that "Brook Trout native distributions would have originally included the Stony River drainage before industrialization," but he found that "based upon empirical data, Brook Trout would now be unlikely to be found in the Stony River below Mount Storm Lake even in the absence of any thermal . . . impacts." Hartman Report, ECF No. 47-5, at 3. He explained that temperatures in the upper Stony River, upstream from Mount Storm Lake, "are too warm to support Brook Trout populations" and "would not naturally support populations downstream where basin areas and water temperatures would naturally be even warmer." Id. at 2. Dr. Hartman stated that between 1999 and 2016, VEPCO only collected six Brook Trout in the upper Stony River during fall sampling events. Id. at 4. Each of the collections occurred when upper Stony River water temperatures were low, which is "consistent with the contention that the [upper Stony River] is thermally unsuitable for Brook Trout during warmer months." Id. To the extent that Brook Trout have shown up in samples from the Stony River, he attributed this to the movement

Case 2:21-cv-00023-TSK   Document 60   Filed 08/13/25   Page 11 of 17  PageID #: 1665
POTOMAC RIVERKEEPERS V. VEPCO                                    2:21-CV-23

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],
AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

of fish from smaller tributaries or the movement of stocked fish. Id. at 4, 5.

Specifically relating to Walleye, Dr. Hartman stated that "Walleye are not native to the Stony River," but they "successfully reproduce" in Mount Storm Lake. Id. at 2. He wrote that Walleye are found immediately below the dam but are considered "wash overs" from the lake. Id. Dr. Hartman opined that "[a]bsent of any anthropogenic impacts, the habitat in the Stony River is not particularly favorable for Walleye . . . ." Id. at 2, 7. He wrote that the Stony River below Mount Storm Lake is a "relatively high gradient system and lacks the large deep pools favored by Walleye." Id. at 7. Critically, he found that because "Walleye survive and reproduce in the Lake where the water is warmer than the Stony River, temperature is not limiting Walleye in the river." Id. Dr. Hartman stated that because Walleye are "already found in the spilling basin below the dam, they already have access to the river below," and, therefore, "if physical habitat were suitable for Walleye" in the middle of the Stony River, "they would already be found there." Id.[2]

---

[2] VEPCO further claims that Dr. Hartman's opinions are confirmed by the omission of Brook Trout and Walleye from the balanced, indigenous population list established by DEP, DNR, and EPA in

Case 2:21-cv-00023-TSK   Document 60   Filed 08/13/25   Page 12 of 17   PageID #: 1666

**POTOMAC RIVERKEEPERS V. VEPCO**                                2:21-CV-23

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],
AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Plaintiffs argue that Dr. Hartman does not refute Dr. Stauffer's findings. Plaintiffs make much of the fact that Dr. Hartman was asked in his deposition whether his report addressed Paragraph 9 of Dr. Stauffer's report, which stated the following:

> Reducing water temperatures and temperature oscillations in the Lake and the Stony River would likely . . . increase the occurrence and growth of Walleye and Brook Trout in the lake and in the downstream Stony River and North Branch of the Potomac River.

Stauffer Decl., ECF No. 9-3, at ¶ 9. To that question, Dr. Hartman responded, "I don't think so." Def. Resp., Exh. C, ECF No. 50-3, at 22:8-10. Dr. Hartman's response to this deposition question, of course, is not dispositive, and the Court finds that the substance of Dr. Hartman's report directly contradicts and necessarily rejects Dr. Stauffer's opinion.[3] Moreover, during his deposition, Dr. Hartman testified as follows:

> Q: Based on these conclusions and your familiarity with the Stony River watershed, if Dominion meets the Delta T limit, that wouldn't improve the likelihood that more

---

connection with Dominion's Section 316(a) studies in the Stony River. Neither Brook Trout nor Walleye has ever been on the list.
[3] Further, Dr. Hartman's report states, "I was retained by counsel for Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("Dominion") to review and comment on the expert opinions of Dr. Stauffer." Hartman Report, ECF No. 47-5, at 2. Dr. Hartman confirmed in his deposition that he was responding to Dr. Stauffer's original expert report. Hartman Dep. at 13:1-9.

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

>   Brook Trout will be in the Stony River below Mt. Storm, right?
>
>   A:   Right.

Id. at 26:8-13.

With respect to the alleged Delta-T violations, given the evidence produced by VEPCO at the summary judgment stage, the Court finds that there exists a genuine issue of material fact regarding redressability. The Court, therefore, denies Plaintiffs' motion. Because jurisdiction remains in dispute, the Court cannot yet address liability on the alleged Delta-T violations, and the Court also denies the portion of VEPCO's motion related to liability for Delta-T violations.

### B.   Reporting Violations

Plaintiffs allege that VEPCO failed to report each individual Delta-T measurement that exceeded 5 degrees Fahrenheit. Mr. Meehan has sworn that he "would like to know more about the temperatures discharged from [Mount Storm Lake] into the Stony River," stating that the additional information "would help [him] determine when and whether it was worth it to fish in the Stony River." Meehan Decl., ECF No. 9-6, at ¶ 22.

"[S]tanding is not dispensed in gross." Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 439 (2017) (citations omitted).

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

"To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Id. (citations and internal quotation marks omitted). "Informational injuries" can be a type of injury that constitutes an Article III injury-in-fact. Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 345 (4th Cir. 2017) (citation omitted). The United States Court of Appeals for the Fourth Circuit has concluded that a plaintiff suffers an informational injury when he is denied access to information required to be disclosed by statute and also "suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." Id.

Here, Plaintiffs have not shown that Mr. Meehan has suffered an informational injury. More specifically, he has not shown that he has suffered "the type of harm Congress sought to prevent by requiring disclosure." See id. Congress's stated purpose in enacting the Clean Water Act was "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Mr. Meehan has sworn that his interest in obtaining the Delta-T measurements is in planning his fishing trips. He did not express an interest in obtaining the information to protect the environment or curtail the purported discharge violations. An inability to plan fishing trips is not

Case 2:21-cv-00023-TSK    Document 60    Filed 08/13/25    Page 15 of 17  PageID #: 1669
POTOMAC RIVERKEEPERS V. VEPCO                                    2:21-CV-23

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],
AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

the type of injury Congress sought to prevent by requiring permittees to submit monthly DMRs.

Moreover, even if Mr. Meehan suffered an informational injury, it is not redressable. Nothing in the record indicates that the Delta-T information will be useful in helping Mr. Meehan plan his fishing trips. Section C.7 of the NPDES Permit requires VEPCO to submit its monthly DMRs to WVDEP within 25 days of the end of the reporting period. See ECF No. 49-1 at DOM0003227. When VEPCO files its DMRs on the 25th of each subsequent month, as required, and assuming that WVDEP makes the filed DMRs available to the public on the same day (which has not been established), the Delta-T measurements would be 25 to 60 days old — too old to help him plan a fishing trip. Finally, even if the Court were to impose a civil penalty sufficient to deter VEPCO from committing the alleged reporting violations in the future, that would not redress Mr. Meehan's purported informational injury. Again, the 25- to 60-day-old Delta-T information submitted on the monthly DMRs would be too stale to help Mr. Meehan plan his fishing trips. For these reasons, the Court finds that Plaintiffs lack standing to challenge the alleged reporting violations. VEPCO's motion is, therefore, granted in part. The Court lacks jurisdiction over claims of alleged reporting violations, and they are dismissed.

Case 2:21-cv-00023-TSK    Document 60    Filed 08/13/25    Page 16 of 17   PageID #: 1670

**POTOMAC RIVERKEEPERS V. VEPCO**                                    2:21-CV-23

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46],
AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

## IV. CONCLUSION

For the reasons discussed, with respect to the alleged Delta-T violations, the Court finds that a genuine issue of material fact exists regarding redressability, such that the Court must deny Plaintiffs' motion. Because jurisdiction is in dispute, the Court cannot yet resolve the question of liability, so the Court also denies VEPCO's motion in part. With respect to the alleged reporting violations, however, the Court finds that Plaintiffs lack standing to challenge them, and, therefore, the Court lacks jurisdiction to consider them. VEPCO's motion is granted on this point. Accordingly, the Court **ORDERS** as follows:

- The stay in this case is **LIFTED**;

- Plaintiffs' partial motion for summary judgment is **DENIED** [ECF No. 46];

- VEPCO's motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART** [ECF No. 48];

- Plaintiffs' claims of reporting violations are **DISMISSED** for lack of jurisdiction; and

- The parties shall meet and confer and file, on or before **August 27, 2025,** a proposed schedule to govern the case moving forward.

The Clerk is **DIRECTED** to transmit copies of the Memorandum Opinion and Order to counsel of record.

**MEMORANDUM OPINION AND ORDER LIFTING STAY, DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT [ECF NO. 46], AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

DATED: August 13, 2025

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA